Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tel: (707) 595-4414
Fax: (707) 581-1983
izaak@izaakschwaiger.com

John Houston Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561-9601
Fax: (415) 561-9609
john@scottlawfirm.net

William A. Cohan, SBN 141804
**WILLIAM A. COHAN, P.C.**
P.O. Box 3448
Rancho Santa Fe, CA 92067
Tel: (858) 832-1632
Fax: (858) 832-1845
bill@williamacohan.com

Attorneys for Plaintiffs BRIAN PAYNE, JESSE SCHWARTZ, JOSHUA SURRATT, JASON HARRE, JACOB FORD, SEAN HAAR, and TERENCE MCGILBRA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIAN PAYNE, JESSE SCHWARTZ, JOSHUA SURRATT, JASON HARRE, JACOB FORD, SEAN HAAR, and TERENCE MCGILBRA<br><br>        Plaintiffs,<br>v.<br><br>CITY OF ROHNERT PARK, BRENDAN JACY TATUM, JOSEPH HUFFAKER, CHRISTOPHER SNYDER, JEFFREY TAYLOR, BRIAN MASTERSON and DOES 1-50, inclusive.<br><br>        Defendants. | Case No:  4:19-cv-05058-HSG<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>*JURY TRIAL DEMANDED* |

PLAINTIFFS BRIAN PAYNE, JESSE SCHWARTZ, JOSHUA SURRATT, JASON HARRE, JACOB FORD, SEAN HAAR, and TERENCE MCGILBRA complain of Defendants and alleges as follows:

### JURISDICTION AND VENUE

1.     This action arises under 42 U.S.C. § 1983. Jurisdiction is conferred by virtue of 28 U.S.C. §§ 1331 and 1343, and by 18 USC § 1964(c).

2.     The conduct alleged herein occurred in Sonoma County, State of California. Venue of this action lies in the United States District Court for the Northern District of California by virtue of 28 USC § 1391.

### PARTIES

3.     Defendant City of Rohnert Park is a public entity situated in the County of Sonoma, State of California and organized under the laws of the State of California.

4.     Defendants Brendan Jacy Tatum, Joseph Huffaker, and Christopher Snyder were police officers employed by the Department of Public Safety for the City of Rohnert Park.  They acted in the course and scope of their employment, and under color of state law, at all times mentioned herein.

5.     Defendant Jeffrey Taylor was employed as a Commander by the Department of Public Safety for the City of Rohnert Park.  In that capacity, he was responsible for supervising the activities of the "Interdiction Team" including its most active members, Brendan Jacy Tatum and Joseph Huffaker.  He acted and failed to act in the course and scope of his employment, and under color of state law, at all times mentioned herein.

6.     Defendant Brian Masterson was employed as the Director of the Department of Public Safety for the City of Rohnert Park.  In that capacity, he was ultimately responsible for the training, supervision and discipline of all police officers including members of the interdiction team.  At all times mentioned herein he acted and failed to act in the course and scope of his employment and under color of state law.

FIRST AMENDED COMPLAINT FOR DAMAGES

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

7.      Plaintiffs do not presently know the true names and capacities of defendants DOES 1 through 50, inclusive, and therefore sue them by these fictitious names. Plaintiffs are informed and believe that DOES 1 through 50, and each of them, were responsible in some manner for the acts or omissions alleged herein. Plaintiffs will seek leave to amend this Complaint to add their true names and capacities when they have been ascertained.

8.      In doing the acts and/or omissions alleged herein, defendants and each of them acted under color of authority and/or under color of state law, and, in concert with each other.

9.      Defendants Tatum, Huffaker, Snyder, Taylor, Masterson and Does 1 through 50 conspired to achieve a common goal and/or acted in concert to achieve said goal.  In doing the acts and omissions alleged herein said Defendants conspired and/or acted in furtherance of the conspiracy to: (a) unlawfully stop and detain the Plaintiffs; (b) unlawfully search their property; (c) commit robbery and extortion through a pattern of racketeering activity; and (d) obstruct justice to impede or prevent discovery of evidence and prosecution for the crimes committed in furtherance of the conspiracy.

## STATEMENT OF FACTS

10.      In or about 2012 the City of Rohnert Park Department of Public Safety created and implemented a drug interdiction team for the purpose of increasing revenue to the City coffers. The express goal was to have members of the team make traffic stops outside of city limits, in the Highway 101 corridor north of Santa Rosa, and seize marijuana and cash suspected of being associated with the illegal sale of marijuana.  Approximately fifty-five percentage of the cash seized and reported would be paid to the City of Rohnert Park.

11.      In or about 2014 defendants Tatum and Huffaker were assigned to the interdiction team.  As a result of their unsupervised and often undocumented activities the number of reported traffic stops outside the city limits increased as did the amount of money being received by the City from the forfeiture of cash.  Defendant Tatum's efforts were so successful that he was named "officer of the year" and promoted to Sergeant in 2015.

- 3 -

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

12.     On November 25, 2015, **BRIAN PAYNE** was traveling southbound on Highway 101 just south of Cloverdale, carrying with him five pounds of lawfully possessed cannabis, when without legal justification he was stopped by an unknown police vehicle. Mr. Payne was directed by an unidentified officer (John Doe 1) to continue to drive down the highway and to pull off at the Asti Exit, a remote and secluded portion of the roadway. Mr. Payne complied, and stopped at the bottom of the off-ramp. He was contacted at the door of his vehicle by John Doe 1 who informed him that he had been pulled over for riding the fog line, which was not true, and is not a violation of California's Vehicle Code.

13.     John Doe 1 immediately directed Mr. Payne to exit his vehicle and began searching the vehicle without consent or other legal justification, despite Mr. Payne's protestations. Once the officer was inside Mr. Payne's vehicle, Mr. Payne informed the officer that he had five pounds of cannabis in his bag. The officer then removed the bag from Mr. Payne's truck and informed him that he would be confiscating the marijuana, this despite Mr. Payne being a lawful medical marijuana patient, lawfully possessing the cannabis. The officer then told Mr. Payne to get back in his truck and leave. Mr. Payne protested that what was happening was not right. The officer then threatened to arrest Mr. Payne for felony marijuana sales if he didn't leave, so Mr. Payne got back in his vehicle and left the scene.

14.     Once back on the road, Mr. Payne realized that the officer had kept his driver's license, and that he had never identified himself or said what agency he was working for. Upon this realization, Mr. Payne pulled off the roadway and dialed 911 to report that he had been robbed. The 911 operator was able to confirm that officers from the Rohnert Park Department of Public Safety were performing interdiction operations in the area.

15.     The officer failed to issue a receipt for any seized property, and issued no citation for any crime or traffic infraction to Mr. Payne.

16.     On or about December 1, 2015, at approximately 11:00 a.m. plaintiff **JESSE SCHWARTZ** was a passenger in a car driven by Evan Jones travelling northbound on Highway 101.  For no legal reason defendant Tatum, accompanied by another officer, initiated a traffic stop

- 4 -

near Cloverdale.  Tatum was in uniform and driving a marked police vehicle.  Jesse Schwartz was ordered to step out of the car and was handcuffed.  Tatum then searched the car without consent or legal justification.  While searching the trunk he discovered a small box containing $55,000 that belonged to Schwartz.  Tatum took the money and told Schwartz he had two options: (1) he could be arrested, taken to jail and then attempt to get the money back or (2) he could deny it was his money and avoid arrest, jail and legal proceedings.  Schwartz was coerced into signing a "disclaimer" form prepared by Tatum, and was given a citation to appear in court at a later date. Tatum kept the $55,000.

17.    Approximately two or three days later Tatum came to Schwartz's home without a warrant or legal cause, and persuaded his roommate to allow him to search Schwartz's room while Schwartz was away.  Later that day Schwartz was informed that his storage locker had also been searched by Rohnert Park police, also without a warrant or legal cause.  None of his belongings were seized or damaged.

18.    Approximately three months later Jesse Schwartz appeared at the Superior Court for the County of Sonoma on the day and time indicated on the citation.  The District Attorney's office had rejected his case for lack of sufficient evidence of a crime. His money was never returned.

19.    In December of 2015, **JOSHUA SURRATT** was travelling southbound on Highway 101 in the area of the Mendocino-Sonoma County line. He was travelling with twenty-six pounds of legal cannabis being delivered to a medical marijuana dispensary in Santa Cruz. As Mr. Surratt approached Cloverdale, he noticed a Rohnert Park Patrol Vehicle parked on the shoulder of the northbound part of the highway. As Mr. Surratt passed, the patrol vehicle darted out across the highway median and pulled alongside Mr. Surratt's vehicle. The patrol vehicle stayed alongside Mr. Surratt's vehicle for a considerable distance, then dropped behind him and initiated a traffic stop unsupported by legal cause. Mr. Surratt yielded to the patrol vehicle and pulled off the side of the road.

- 5 -

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

20. Sergeant Tatum and Officer Huffaker got out of the police cruiser and contacted Mr. Surratt at his vehicle, immediately accusing Mr. Surratt of having cannabis in his vehicle. When Mr. Surratt advised that he did not, the officers became increasingly aggressive, asking Mr. Surratt if he was calling them liars. The officers removed Mr. Surratt from his vehicle and placed him in handcuffs. Then for the first time the officers asked him for his license and proof of insurance. Already handcuffed, Mr. Surratt told Tatum that the officer could retrieve his driver's license from his wallet located in his pants pocket. Mr. Surratt volunteered to get his insurance paperwork from his glove compartment, but Tatum told him no, that the officers would retrieve it. Mr. Surratt protested, saying that he did not give consent for the officers to enter his vehicle.

21. While Tatum guarded Mr. Surratt, Officer Huffaker entered his vehicle and opened the glove box, retrieving the insurance paperwork. Huffaker continued searching about the interior of the vehicle, in the center console and under the seats. He then exited the vehicle finding nothing of interest, and shrugged his shoulders at Sergeant Tatum as if to say "I guess there's nothing here." Tatum became angry and began yelling at Mr. Surratt, demanding to know where the money or marijuana was. Mr. Surratt did not reply.

22. On the back of Mr. Surratt's pickup truck was a camper top with tinted windows. The officers began trying to peer through the dark glass but could not see anything. They demanded to know what Mr. Surratt had in the back of his truck. Mr. Surratt informed them that it was not marijuana, and offered to retrieve the contents for them. Sergeant Tatum replied that that would not be necessary, as he opened the back of the truck without consent or legal justification.

23. Tatum began unloading the contents of Mr. Surratt's truck bed onto the side of the road as Mr. Surratt protested the intrusion more. Ultimately Sergeant Tatum discovered a bin filled with twenty-six pounds of cannabis. Mr. Surratt then explained that he was lawfully transporting the cannabis, and that he was in possession of all the required paperwork. Tatum told him his paperwork was invalid. Mr. Surratt said that he didn't think a judge would see it that way. In response, Tatum became enraged and told Mr. Surratt that he had two options: The officers

FIRST AMENDED COMPLAINT FOR DAMAGES

could seize his truck, his belongings, and his marijuana and arrest him for felonies, or Mr. Surratt could surrender the cannabis and the officers would be on their way.

24.     Mr. Surratt answered, "Obviously option B, if you put it like that." Tatum then moved very close to Mr. Surratt's face and said, "You don't tell anyone about this either. Not your lawyer, not the collective where the herb is going, no one. If we don't hear from you, you won't hear from us. If your lawyer comes calling asking around the department or anything like that, we will come up to your property in Ukiah. I bet we could find some more felonies if we came up there, huh?"

25.     Officer Huffaker then pulled out Mr. Surratt's driver's license and took a picture of it with his phone, then took a picture of Mr. Surratt's license plate. Tatum repeated, "Do you understand me? We don't hear from you, you don't hear from us."

26.     The officers then unhandcuffed Mr. Surratt and began to pull away, leaving Mr. Surratt and the contents of his vehicle on the side of road, but then stopped as Huffaker rolled down his window and asked Mr. Surratt "What strains are in here?"

27.     On October 3, 2016, **JASON HARRE** was traveling southbound on Highway 101 north of the Mendocino-Sonoma County line, lawfully transporting thirty-four pounds of medical cannabis to a medical collective in Los Angeles when a police SUV pulled next to his vehicle and began following him. The patrol vehicle continued to follow Mr. Harre into Sonoma County, through the town of Cloverdale, ultimately initiating a traffic stop without legal justification at the Asti Exit, a remote and secluded portion of the roadway. Mr. Harre yielded to the traffic stop. Officer Huffaker and Sergeant Tatum got out of the patrol vehicle and contacted Mr. Harre at the side of his vehicle. The officers were dressed in commando-like uniforms wearing tactical vests marked "ATF" with chest holsters for their firearms. The officers advised Mr. Harre that he had not been maintaining his lane, ordered him out of his vehicle, and began peppering him with questions about whether he was transporting marijuana.

28.     Mr. Harre denied that he was transporting marijuana. He admitted, however, that his driver's license had been suspended for failure to pay a traffic ticket. The officers then told

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

FIRST AMENDED COMPLAINT FOR DAMAGES

Mr. Harre that they would probably have to tow his truck. They again asked what they would find in his vehicle if they searched it. Mr. Harre then acknowledged that he was carrying legal cannabis, and that he had documentation for the cannabis in his vehicle.

29.     The officers placed Mr. Harre in handcuffs and began to search the vehicle, locating the thirty-four pounds of medical cannabis. The officers told Mr. Harre that they found no documentation for the cannabis, so Mr. Harre asked them to call the dispensary to confirm the delivery. Sergeant Tatum phoned the dispensary, and confirmed the delivery. Mr. Harre's phone then rang, and Sergeant Tatum answered. The caller was the dispensary's lawyer who confirmed the validity of the shipment.

30.     Despite this information, the officers continued interrogating Mr. Harre, asking him questions about the techniques he used to grow the cannabis, what strains he was transporting, and other questions which Mr. Harre believed would only be relevant to a broker of marijuana looking to sell another person's product. The officers took Mr. Harre's cannabis and confiscated $7,000 in cash, providing no receipts for either. Mr. Harre was released with a citation to appear in court.

31.     Officer Huffaker and Sergeant Tatum submitted the case to the Sonoma County District Attorney for prosecution, but it was rejected for lack of sufficient evidence. Mr. Harre's property was never returned.

32.     On October 18, 2016, **JACOB FORD** was driving southbound on Highway 101 near the Sonoma-Mendocino County line carrying twenty-three pounds of legal cannabis. Just north of Cloverdale, Mr. Ford began being followed by a Rohnert Park Department of Public Safety Patrol SUV. He was pulled over at the Asti Exit for an expired registration. Sergeant Tatum and Officer Christopher Snyder approached Mr. Ford's vehicle and immediately asked if he was in possession of cannabis. Mr. Ford acknowledged that he was in possession of legal cannabis, that it was secured and properly marked and barcoded in compliance with state law.

33.     The officers ordered Mr. Ford out of his vehicle and began asking him questions about what strains of marijuana were in his possession. The officers then told him he had a

FIRST AMENDED COMPLAINT FOR DAMAGES

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

choice: he could surrender the cannabis to them and he would be free to go on his way, or they would arrest him for a felony. Mr. Ford protested that what the officers were doing was wrong, and stated that he would rather go to court than lose the cannabis. As a result, Mr. Ford was arrested and cited for felony sales, transportation, and conspiracy. Mr. Ford was cited to appear in court on February 17th. The officers searched his vehicle without legal justification and confiscated the marijuana.

34. Mr. Ford immediately contacted his attorney in an attempt to reclaim the stolen cannabis. Mr. Ford's attorney contacted the Rohnert Park Department of Public Safety and demanded the cannabis be preserved, but according to the Department, the cannabis had already been destroyed, notwithstanding the fact that Mr. Ford's court date had not yet arrived, and no disclaimer of ownership had been signed.

35. On February 17, 2017, Mr. Ford appeared in Sonoma County Superior Court, but there was no record of his arrest before the court, and no report had been received by the prosecutor's office. His property was never returned.

36. On December 8, 2016, SEAN HAAR was travelling southbound on Highway 101 between Cloverdale and Geyserville at approximately 1:00 pm., lawfully transporting 230 pounds of legal, medical cannabis. It was raining, and Mr. Haar's cruise control was set to the speed limit. About this time Mr. Haar noticed an unmarked police vehicle behind him which activated it's forward facing lights and initiated a traffic stop without legal justification. Mr. Haar yielded to the patrol vehicle's lights and pulled off the side of the road. Inside the patrol vehicle were Sgt. Tatum and another unidentified officer. Both were dressed in plainclothes, but wore ballistic vests and had guns visible on their belts as they approached both sides of Mr. Haar's vehicle simultaneously. The officers informed Mr. Haar that they had stopped him for speeding, and Mr. Haar told them that they were mistaken. The officers requested Mr. Haar's license, registration, and insurance which he provided without delay.

FIRST AMENDED COMPLAINT FOR DAMAGES

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

37.     The officers ordered Mr. Haar out of his vehicle in the rain and informed him that they were part of a drug interdiction team looking for cash and contraband, and that they had reason to believe Mr. Haar was carrying both. They asked Mr. Haar for consent to search his vehicle, which Mr. Haar declined to give. Mr. Haar disagreed that he had done anything to warrant the detention and that he certainly hadn't been speeding. The officers told Mr. Haar that it was only their intent to interdict illegal cannabis, and that they were not going to take legitimate "medicine." They told Mr. Haar that they really didn't want to have to arrest him, and that he should simply consent to the search.

38.     At this point Mr. Haar was getting soaked in the rain, and given the assurances of the officers that they were not concerned with legitimate medical marijuana, agreed that the officers could search his vehicle. The officers then demanded that Mr. Haar unlock his iphone and allow them to search its contents, or he would be arrested and taken to jail. Mr. Haar acquiesced to their demands, and one officer began searching through Mr. Haar's phone while Sgt. Tatum began searching through Mr. Haar's vehicle.

39.     Sgt. Tatum discovered the cannabis in the covered back of Mr. Haar's pickup truck. The officers asked for Mr. Haar's medical paperwork, which he provided. The officers returned Mr. Haar's phone, confiscated his cannabis despite being provided legal documentation, issued Mr. Haar a citation for possession more than an ounce of cannabis, and drove away. Believing he had been robbed, Mr. Haar opened his phone to call his attorney, and found that the phone's screen open to photos of his girlfriend in a state of undress. Mr. Haar contacted the City of Rohnert Park and the Sonoma County courthouse, but no one had any record of him being issued a citation.

40.     On September 6, 2016, **TERENCE MCGILBRA** was travelling southbound on Highway 101 just outside of Cloverdale. He was the president of a medical marijuana collective with approximately 200 members, and was lawfully transporting fifteen pounds of medical cannabis as part of a legal delivery service

- 10 -

FIRST AMENDED COMPLAINT FOR DAMAGES

associated with the collective. Shortly before arriving at the Asti Exit, a black police SUV pulled alongside Mr. McGilbra's vehicle and two uniformed officers began staring at him. They matched speed alongside Mr. McGilbra' s vehicle for some time, and Mr. McGilbra began to feel uncomfortable and slow his speed. The patrol vehicle slowed down with him, and then after some dropped behind him and initiated a traffic stop without any legal justification.

41.     Sgt. Tatum and another officer got out of the patrol vehicle and contacted Mr. McGilbra at the side of his vehicle. They asked for his license, which Mr. McGilbra provided, and told him they had stopped him for speeding. Mr. McGilbra explained that the officers were mistaken. The officers then asked whether there was anything in Mr. McGilbra's car they should know about. Mr. McGilbra responded that there was not. The officers the ordered Mr. McGilbra out of his vehicle and commanded him to sit on the gravel shoulder in front of his car. He complied. The officers then requested consent to search Mr. McGilbra's vehicle. Mr. McGilbra declined. The officers responded that they could "get the dogs" if he wouldn' t consent, and then ultimately told Mr. McGilbra that they were going to search his vehicle anyway.

42.     Sgt. Tatum opened the trunk of Mr. McGilbra's vehicle and discovered the cannabis inside. The other officer approached Mr. McGilbra and said, "Terence, I thought you said you didn't have anything. We can take you, or we can take the bag." Mr. McGilbra was taken aback by the officer's comments, and believed he may have misheard him. "What?" asked Mr. McGilbra. "We can take you, or we can take the bag," the officer stated again.

43.     Mr. McGilbra knew he was being robbed. "Take the bag," he said. The officers loaded the cannabis in their patrol vehicle and drove away, leaving Mr. McGilbra on the side of the road. During this encounter, at least one of the officers had their body-worn camera running, which captured these events.

FIRST AMENDED COMPLAINT FOR DAMAGES

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

44.     On December 29, 2016, Huedell Freeman was traveling southbound on Highway 101 near Cloverdale transporting 47 pounds of legal cannabis.  He was subjected to a pre-textual traffic stop by Brendan Jacy Tatum and Joseph Huffaker.  After confirming that the marijuana was being lawfully transported to the Higher Path dispensary in southern California, Tatum and Huffaker took possession of the marijuana and issued a citation to Freeman for possession of marijuana.  Freeman was notified before his first court appearance that the marijuana had been destroyed though a destruction order was never filed.  Mr. Freeman's case is pending in this court. *Freeman v. City of Rohnert Park*, Case No. 18-cv-7661 HSG.

45.     On December 5, 2017, Ezekial Flatten was traveling southbound on Highway 101 near the Mendocino-Sonoma County border transporting three pounds of legal cannabis.  He was subjected to an unlawful traffic stop by Joseph Huffaker and another unknown officer.  The officers proceeded to unlawfully search his vehicle and discovered the marijuana in a sealed cardboard box.  Mr. Flatten was informed that the two men posing as officers were with the ATF.  They left the scene without identifying themselves or issuing a citation.  Mr. Flatten's case is presently pending in this court. *Flatten v. City of Rohnert Park*, Case No. 18-cv-6964 HSG.

46.     On or about February 13, 2018, in furtherance of their conspiracy to commit thefts, robberies, extortion, tax evasion, money laundering and obstruction of justice (all are RICO predicate crimes) defendant Tatum fabricated and caused publication of a false and fraudulent "Press Release" (the "press release") by and on behalf of the Rohnert Park Department of Public Safety. In violation of 18 USC 1512(b) Tatum's "press release" falsely claimed inter alia: (1) the theft, robbery and extortion committed against Ezekiel Flatten was "...a traffic enforcement stop..."; (2) the interrogation of Flatten—identified as "the driver" of the stopped vehicle—was "...an attempt to identify the owners of the cannabis the driver possessed..."; and (3) "The officers...believed [the driver] was involved in illegal black market cannabis and acting unlawfully." Tatum's false statements in and publication of the "press release" constituted a corrupt endeavor to influence, delay or prevent the testimony of Flatten, the plaintiffs herein, and other yet to be identified victims of Tatum's and his co-conspirators' racketeering activities.

- 12 -

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

## STATEMENT OF DAMAGES

47.    As a result of defendants' conduct, plaintiffs sustained economic damages and consequential damages.

48.    As a result of defendants' conduct, plaintiffs sustained and will continue to sustain damages to their careers, reputations, future and prospective earning capacities and wages, and prospective economic opportunities and advantages in an amount determined according to proof.

49.    As a further result of defendants' conduct, plaintiffs suffered and will continue to suffer general damages including fear, anxiety, humiliation, and emotional distress in an amount to be determined according to proof.

50.    The actions of Defendants Brendan Jacy Tatum, Joseph Huffaker, Christopher Snyder, Jeffrey Taylor, Brian Masterson and Does 1-50 were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of plaintiffs, who seek punitive and exemplary damages according to proof.

51.    Plaintiffs have retained private counsel to represent them in this matter and are entitled to an award of attorneys' fees.

## FIRST CAUSE OF ACTION
### [18 USC §§ 1962(c) and (d)] – RICO AS AGAINST DEFENDANTS TATUM, HUFFAKER, SNYDER, TAYLOR, MASTERSON AND DOES 1-50]

52.    Plaintiffs hereby incorporates paragraphs 1 through 43 as though set forth in full.

53.    Plaintiffs allege causes of action against all defendants (excepting the City of Rohnert Park) based on 18 USC § 1962(c) and (d) for conducting and conspiring to conduct, respectively, the affairs of an enterprise through a pattern of racketeering activity by which Plaintiffs have been injured in their businesses and properties.

54.    Jurisdiction and venue are provided by 18 USC 1964(c) and 28 USC 1391, respectively.

55.    The "enterprise" (18 USC 1961(4)) through which defendants conducted their racketeering activities is the Rohnert Park Department of Public Safety.

- 13 -

56.     The numerous predicate crimes committed by defendants causing injuries to plaintiffs and others include: (1) extortion (18 USC 1951(b)(2)); (2) obstruction of justice (18 USC 1512(b)(1)); (3) money laundering (18 USC 1956 (a)(1)(A)(i) and(a)(1)(B)(i)); and (4) money laundering by tax fraud (26 USC 7206) and evasion (26 USC 7201 and 18 USC 1956(a)(1)(A)(ii)).

57.     The numerous predicate crimes committed by defendants causing injuries to plaintiffs and others also include California state law crimes: (1) grand larceny (Cal. Penal Code § 487); and (2) extortion (Cal. Penal Code § 518) incorporated by 18 U.S.C. § 1961(1)(A) into actionable "racketeering activity," i.e. ". . . any act or threat involving . . . robbery . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year;"

58.     Defendants Tatum and Huffaker conducted financial transactions with the proceeds of extortion with intent to promote their continuing racketeering and with the intent to violate 26 USC 7201 and/or 7206 by filing false and fraudulent income tax returns omitting the income from their robberies and extortionate seizures of cash and proceeds of the cannabis sold after acquiring it by theft and extortion. Furthermore, defendants Tatum and Huffaker conducted financial transactions to conceal or disguise the nature, source, ownership and control of the proceeds of their thefts and extortion, including the purchase of personal property such as boats, automobiles, and household goods with the unreported cash, as well as the purchase of real property. This real property was then improved through the injection of more unreported cash, with the design to later sell it at a substantially increased price, thereby laundering the proceeds of the criminal enterprise.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (42 U.S.C. §1983 CUSTOM AND PRACTICE AS AGAINST THE CITY OF ROHNERT PARK)

59.     Plaintiffs hereby incorporate paragraphs 1 through 50 as though set forth in full.

- 14 -

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

60.     The custom and practice of the Interdiction Team, including defendants Tatum and Huffaker, was to conduct unlawful stops and unlawful searches for the purpose of stealing cannabis and/or cash in addition to lawful activities.  Between 2014 and 2017, defendants Tatum and Huffaker conducted hundreds of stops and unlawful searches, outside of the city limits, while personally enriching themselves from the thefts of marijuana and cash.

61.     he custom and practice and racketeering activities alleged herein were authorized, encouraged and condoned by Defendants Brian Masterson, as Director of the Department of Public Safety, and Jeffrey Taylor, as the Commander of the Interdiction Team. They failed to adopt, maintain and implement policies consistent with contemporary law enforcement standards. For example: (1)  members of the interdiction team were not required to report when they were on duty and engaged in interdiction activities outside of the city limits; (2) members of the interdiction team were not required to report to dispatch or a supervisor when and where they conducted a traffic stop; (3) members of the interdiction team had the discretion to (a) take possession of marijuana and/or cash without documenting the event, or (b) falsely document the amount of marijuana and/or cash taken into custody; (4) members of the interdiction team were not required to document a chain of custody regarding marijuana and/or cash taken from subjects; and (5) members of the interdiction team were not required to comply with policies regarding the recovery and submission of marijuana into evidence or its ultimate destruction.

62.     As implemented members of the interdiction team had the discretion to (a) arrest or cite the person(s) who possessed the cannabis and/or cash and report all or some of the property as evidence of a crime, or (b) not arrest or cite the person(s) who possessed cannabis and/or cash, steal the property, and not report the stop and theft.

63.     This custom and practice was the moving force behind the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

- 15 -

FIRST AMENDED COMPLAINT FOR DAMAGES

**PRAYER**

1.    For compensatory damages according to proof;

2.    For general damages according to proof;

3.    For an award of punitive and exemplary damages against individual defendants according to proof;

4.    For costs and attorneys' fees pursuant to 42 USC 1988;

5.    For treble damages, costs, and reasonable attorneys' fees pursuant 18 USC 1964(c);

6.    For such other relief as the Court may deem proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby request a jury trial on all issues so triable.

Dated: January 30, 2020                         **SCHWAIGER LAW FIRM**


                                                /s/ Izaak D. Schwaiger
                                                Izaak D. Schwaiger
                                                Attorney for Plaintiffs

**SCHWAIGER LAW FIRM**
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

- 16 -

FIRST AMENDED COMPLAINT FOR DAMAGES